The plaintiffs, Clayton and Williams, brought this action to recover large sums of money due them from the defendant. In their complaint *Page 281 
they alleged that the defendant was insolvent, and, for causes stated, demanded that a receiver be appointed to take charge of the property and wind up its business, etc. They were large stockholders as well as creditors of the defendant and were appointed receivers. They and other creditors obtained judgments against the defendants, and its leviable property was sold for a sum of money greatly inadequate to pay its debt. The sum so realized was distributed to creditors.
In the course of the action it became and was treated as a creditor's action, and the appellant Daniel Black, a judgment creditor, was made a party plaintiff. Thereupon it was referred to a referee "to take and state an account of the effects that are, or ought to be, if any, in the hands of the said receivers belonging to said company, and the amount of capital stock of said company, paid and unpaid. That he will report specially whether there are, or ought to be, any effects in the hands of said receivers applicable to the Black judgment, and if so, how much. That he will report his findings of fact and conclusions of law separate, and make his report to August Term of this Court."
Afterwards the referee made his report, and among other (387) findings of fact, found:
"2. I find that the capital stock of the defendant company at its organization was $1,500,000, and that the same was divided into 150,000 shares of the par value of $10 each. And the said capital stock was issued to the corporators as full paid-up stock, as allowed by its charter.
"3. I find that the said capital stock of said corporation was, in fact, never paid up in cash at the organization of the company or afterwards, but was issued to the corporators in proportion to their several interests in certain real estate then owned by them in Ashe County, and known as the Ore Knob property, consisting of a tract of land upon which was a mine of copper. But no evidence was offered to show the value of said real property at the time such stock was issued."
He further finds, as a conclusion of law:
"1. From the foregoing facts, I find that the receivers neither have, nor ought to have, any assets in their hands applicable to the Black judgment, and recommend that judgment be rendered accordingly.
"2. I also find that all the assets that came into the hands of the receivers were paid out under order of the court, and that plaintiff Daniel Black is concluded as to that matter by the judgments heretofore rendered. "
The appellant filed exceptions to the report as follows:
"1. That plaintiffs except to the referee's finding in his first conclusion of law, and for cause of exception say that he had no evidence to *Page 282 
sustain his finding that the receivers neither had nor ought to have had, any assets in their hands, when the evidence showed that the paid-up capital stock of the defendant was $1,500,000, and the defendant's judgment only amounted to a little over $30,000; and the receivers neither had, nor ought to have had, the balance of the paid-up capital stock in excess of the debts, the said receivers themselves being the principal creditors and subscribers to the said paid-up capital (388) stock to the amount of, to wit, Herman Williams in the sum of $27,750, and J. E. Clayton in the sum of $28,660.
2. That plaintiffs except to the second conclusion of law by the referee, and for cause of exception say: "That he erred in finding that the plaintiffs were concluded by the judgments rendered in the cause by the receiver, when his finding of fact eight shows that the plaintiffs were not a party to the action at the time the judgment was rendered by Clark, J., but were made a party at the succeeding term of the Court, and the order ofArmfield, J., at said term, could not have the effect of an original cause of the said receivers against said defendant company, and that it is contrary to his finding of fact No. 9. That the said Herman Williams and J. E. Clayton were then due the company as subscribers to the capital stock more than fifty thousand dollars. While said amount constituted a trust fund for the benefit of creditors, and no part of which could be taken by them (the said Williams and Clayton) until all the other creditors were satisfied or the subscribed stock was exhausted."
The court thereupon gave judgment, whereof the following is a copy:
"This cause coming on to be heard upon the report of Commissioner Doughton and exceptions thereto, and being heard, it is adjudged that the exceptions be overruled, and the report confirmed. That Commissioner Doughton be allowed the sum of seventy-five dollars for taking and stating the account and making his report, to be paid by the said receivers, Jas. E. Clayton and Herman Williams, and upon the payment thereof that they be discharged from further duties and liabilities as such receivers. "
Daniel Black excepted and appealed.
Although this action was not at first formally a creditor's action, it afterwards was made and treated as such, and the appellant, a judgment creditor, was properly made a party plaintiff to the end he might share in the assets of the defendant accordingly as he might be entitled. That he may have *Page 283 
shared in assets in the hands of the receivers did not prevent him or other creditors from insisting that there were, or ought to be, other and additional assets out of which his and other unpaid debts might and should be paid. There was no final decree or judgment at the time the order of reference was made, and there is, hence, no reason why the appellant should be concluded by former orders and judgments entered in the course of the action. The action is equitable in its nature, and it was the duty of the court to see that the receivers had collected all the assets of the defendant and distributed the same to parties entitled to have the same according to their respective rights.
Very certainly, the capital stock, paid or unpaid, of the defendant, constitutes a trust fund for the benefit of its creditors, and whatever may be the rights of the stockholders as among themselves, the creditors have the right to have such fund collected and applied to the discharge of their debts. If the capital stock has not been paid for, it is the plain duty of the court to require it to be collected, or so much thereof as may be necessary to pay its unpaid debts. Foundry Co. v. Killian, 99 N.C. 501, and cases there cited; Heggie v. B. L. Association, 107 N.C. 581;Sawyer v. Hay, 17 Wall., 620; Wood v. Drummer, 3 Mason, 308; Ang. and Ames Corp., sec. 600, et seq.
The defendant was incorporated for mining and smelting purposes, and it may be that its capital stock might in good faith have been paid for by its stockholders with property other than money, appropriate for its purposes, as a tract of land containing a copper mine, and when the stock has been paid in good faith such payment would be legitimate, unless in some proper way and connection it should (390) be alleged and proven that such payment was simulated, grossly inadequate and fraudulent, and intended to serve fraudulent purposes. In such case, such fraud appearing, the court would compel payment of the stock, certainly less a fair price for the property so applied and used. And in an action like this, the creditor might allege the fraud and have the questions arising in that respect determined according to the course and practice of the court. There is no valid reason why he might not. The court has ample jurisdiction for the purpose as to parties and the subject-matter embraced by the litigation.
In the present state of the pleadings in this case, no question of fraud is raised as to the payment of the capital stock of the defendant; the referee, however, finds that, in fact, it never was paid in cash, but proper certificates of stock were "issued to the corporators in proportion to their several interests in certain real estate then owned by them in Ashe County, and known as the Ore Knob property, consisting of a tract of land upon which was a mine of copper." He does not find, as he should have done, if such was the fact, that the property was received and *Page 284 
conveyed to the company with the understanding and intent that it should be and stand as payment for the stock, or for some part of it, if so intended. It is stated by the referee that no evidence was offered to show the value of the property — whether it was treated as a payment of the stock, or some part of it, seems to have been wholly ignored. Such finding was important, and the case could not be properly disposed of without it. It is scarcely probable that the property was so intended. The capital stock was $1,500,000, divided into shares of $10 each. That is a great sum, and it is scarcely probable that the land was accepted and treated as of that value. It is more probable that the property was taken at a fair value, and the stock, except to that extent, was (391) never paid for. The referee should have found how the facts were. Hence, the referee's first finding of law, that the receivers "neither have, nor ought to have, any assets in their hands applicable to the" appellant's judgment, was unwarranted.
The inquiry does not involve any question of fraud. As we have said, such question does not arise in the present state of the pleadings.
The charter of the defendant provides that "said (the capital) stock shall be issued as full paid stock, shall be personal property and transferable." This does not imply that the stock shall be issued to the stockholders without paying anything for it. Though the charter does not, in terms, imply that it may be paid for otherwise than with money, it would seem that it might be paid for with property, but surely not at a nominal, simulated price! But we advert to this provision of the charter — rather a peculiar one — only to say that it does not imply that the corporators are to receive the certificates of stock without paying for the same.
There is error. The judgment must be set aside, and the referee must be directed to find the facts as indicated in this opinion, and if it shall turn out that the capital stock of the defendant has not been so paid in property, then the receivers must be required to collect so much thereof as may be adequate to pay the appellant's debt.